Good afternoon. Illinois Appellate Court, 1st District Court is now in session. The 6th Division, the Honorable Justice Maureen Connors presiding. Case number 1-9-0-4-1-4, People v. DeAndre Williams. Thank you very much, Mr. Schaffer, and good afternoon, gentlemen all. And again, I'm Justice Connors. I will be presiding here today. Gentlemen, before you identify yourselves to the record, I'm going to just advise you that how we usually proceed in this division is we give each party 10 minutes to argue, free of our interruptions or aggravations. And then after that 10 minutes is up, we will have questions from the justices. Mr. Spelberg, you will have, oh wait, who's our appellant here? Is it Mr. Jackson? You will have then five minutes for rebuttal, of course, once we ask questions to both you and Mr. Spelberg. Any comment or objection to that procedure, gentlemen? No, Your Honor. No, Your Honor. Thank you. All right. I would ask the lawyers for the sake of our record to identify themselves to the record, if you would, please. Ian Jackson from the Office of the State Appellate Defender on behalf of the defendant appellant, DeAndre Williams. Thank you, Mr. Jackson. Good afternoon, Your Honors. Assistant State Attorney Alan Spelberg on behalf of the people of the state of Illinois. And um, so it's 107 right now. And are you ready to proceed, Mr Jackson? I am. Thank you, Your Honor. If you would, sir, please. May it please the court Council again. My name is Ian Jackson on behalf of the defendant appellant, Mr DeAndre Williams. There's one issue in this case. Mr Williams was not eligible for mandatory class X sentencing because his prior burglary conviction would not have been an offense now classified as a case. Because of the 17 year old in 2018, he would have only been subject to an adjudication of delinquency for that burglary. Now, I just wanna make a brief aside before I continue talking about Mr Williams. I want to just update the court on procedural posture of people be miles, which is the published decision that supports Mr Williams's position in this case. At the end of September, the Illinois Supreme Court granted the state's P. L. A. And Miles. My office, which represents Mr Miles, subsequently learned that he passed away earlier this year. So the state has filed a motion in the Supreme Court, moving the court to dismiss the P. L. A. And to vacate the opinion in miles. Now, my office has filed a response to that motion, agreeing that the proper course is to dismiss the P. L. A. But disagreeing that there's any legal basis to vacate the opinion. Uh, since the opinion of miles, since it was issued before Mr Miles passed away now. So what was, uh, excuse me, counseling? Uh, Judge Harris here. Uh, people versus smile. What is the basis for saying they should vacate the lower court decision? Um, to mine. I'm not. I'm not certain. Um, I believe it's because because Mr Miles has since died. Um, and and so I can't speak to. I don't know. P. L. A. is, I think both. It's certainly my expectation that it will be that the P. L. A. Will be dismissed. Uh, I expect that the miles opinion will remain good law. Um, even if it were vacated for some reason, um, it would not be vacated on the merits. And, uh, nonetheless, the reason in any event that the reasoning is underlying it is sound. So I'll turn back on as far as ahead today. Anyway, do we not gentlemen? It's not been vacated right now. Correct. Correct. And Mr Spellberg, is that true? It's not been vacated. It still stands. That is correct, Your Honor. Okay, so we want to proceed today. You're just giving us some up to date information, and I thank you for that, Mr Jackson. I wasn't aware of that. So thank you very much. Thank you. You're welcome. You're welcome. So I'll continue with with Mr Williams then. Um, so just quickly a couple of the main facts in this case. Um, the class two robbery that Mr Williams was convicted of took place on June 7th, 2018. At that time, Mr Williams was 22 years old. He had two prior felony convictions in his background. One was a robbery from 2014 when he was 18 years old, and then he also this burglary conviction, which was in 2013 when Mr Williams was 17 years old. And it's this conviction that is really at the center of this case as we look at the recidivist class X sentencing statute. So, uh, that is, of course, at 7 30 I l c s 5 slash 5-4 .5-95 B. And in relevant parts, when shallow defendant receive a class X sentence, it's when the defendant is over the age of 21 years old, is convicted of a class one or class two felony after having twice been convicted of an offense that contains the same elements as an offense now classified in Illinois as a class two or greater class felony. And the statute defines now to mean at the time the present offense was committed. So here there's no dispute that Mr Williams was over 21 and he was convicted of a class two robbery in this case. But according to the plain language of Section 95 B, his burglary conviction is not for an offense classified on June 7th 2018 as a class two felony in Illinois for a 17 year old. And that's because since 2014, the year after Mr Williams committed his burglary, the Juvenile Court Act was amended to hold exclusive jurisdiction over a 17 year old charged with burglary. So that means that at the time of the offense, in this case, a burglary committed by a 17 year old Mr Williams would not be a class two felony conviction. It would be an adjudication of delinquency. Now, the state says, well, burglary was and is a class two felony in Illinois. And to that we say not for everyone at all times. Specifically, it would no longer be a felony conviction for someone younger than 18. It is again instead an adjudication of delinquency. And that's what it would be for Mr Williams as a 17 year old in 2018. Thus, although Mr Williams does still have a felony conviction for burglary, which could properly be considered as aggravation in sentencing, it does not count as a predicate offense under the mandatory class X sentencing statute with its focus on felony convictions. As our Supreme Court has recognized in people be tailored, the Legislature knows how to differentiate between an adjudication of delinquency and a conviction. But no such distinction is included in Section 95 B. The focus is on convictions and whether those convictions would now be classified in the requisite way. And again, it's our position that Williams is burglary conviction would not still be classified as a class two felony conviction if he committed it as a 17 year old in June 2018. After the relevant amendment to the Juvenile Court Act, it would just be classified as an adjudication of delinquency. This this plain meaning of the statute also does align with the Legislature's culpability and punishment for individuals who violate laws when they're young. As an example, the relevant Juvenile Court Act amendment here, which raised the age at which all but particular serious felonies are considered juvenile matters. You know, this indicates the legislative intent that minors breaking laws should be treated differently and less severely than adults. And the same logic applies for recidivist statute like this one, where Section 95 B is written to be open to the possibility that conduct once considered more serious may later be viewed as less serious and not appropriate for justifying a more severe recidivist based sentence. So in some, the plain language of Section 95 B supports our position. Mr. Williams asked the court to find that his prior burglary committed when he was 17 years old would not have been an offense now classified as a class two felony conviction on June 7th, 2018 and thus cannot serve as a predicate offense for mandatory class X sentencing. In this case, as a result, we ask that this court reverse and remand for a new sentencing hearing for class two robbery. Council, thank you. And Justice Harris, do you have any questions, sir? No, I don't. Thank you, Justice. Justice Griffin. Did the, um, did the two 2014 amendment to the Juvenile Court Act, did that change the elements of the offense or just the jurisdiction? It changed the jurisdiction. So in, in the act in question, you know, uh, 95.B, uh, it talks about the same elements as an offense. Now does, does, does that affect you? How do you respond to that? So Section 95 B is focused also on the dispositional outcome. And the legislature made language choices to focus on convictions and whether those would still be classified, uh, in the same way. Um, you know, a, a juvenile who, who commits burglary is if they're found guilty, they're not going to receive a felony conviction, right? They're going to receive an adjudication of delinquency. Thanks. I have nothing else. Thanks. Um, Mr. Jackson, can I ask you, what do you think is the proper way for us to analyze this case? Do we begin with the temporal reach of the juvenile statute and come to that conclusion? Or do we first look to the unified code of corrections and try to parse the wording there, come to that conclusion or do both of them at the same time? It's, it's an interesting dynamic. What do you think? I think it's, it is somewhat simultaneous. I mean, the, this case is, is first and foremost focused on Section 95 B and the plain language therein. Um, but the intervening amendment to the juvenile court act by intervening, I mean, the one that occurred after, uh, his burglary in this case, um, that does, uh, color the interpretation of, uh, what Section 95 B means and, and what, what constitute class two or greater felony convictions now? Well, in the miles case, um, doesn't the court go first to the UCC and then makes its major reliance on that versus looking at the juvenile code? Um, I would have to check the decision for the, the, the order in which they do that. But I know that they do. Yeah. Okay. Do you think that? Yeah. I do think they rely heavily on the code of corrections. And, you know, one way they do that is, is also to compare, uh, compare Section 95 B with the extended sentencing statute as analyzed in People v. Jones. And, and, you know, there's, there's an important distinction between those two cases and that's that the extended term sentencing statute, uh, includes language specifically contemplating adjudications of delinquency or that, you know, acts which would constitute classes, uh, felony class offenses if committed by an adult. And that was language that was specifically included in, in the extended terms sentencing statute, but not included in Section 95 B. And I do think that's, that's quite instructive here as well. All right. Counsel, my last question. Um, your opponent states a number of pretty strong cases, one Supreme Court from 2017. You're familiar with that? Yes. How can we disregard the finding in Hunter? So Hunter and Richardson fall into a sort of a similar category. You know, they're both saying that the certain types of amendments to the Juvenile Court Act apply prospectively, not retroactively. And here we're not all intents and purposes now an adjudication of delinquency. He has, he has this felony conviction, but Section 95 B is concerned with what it means now. And now it would, it would be if committed at the time of this present offense, an adjudication of delinquency. So we're not, we're not asking for retroactive application. It's, it is in fact prospective to when the amendment occurred. All right. Thank you, Mr Jackson. Is there anything else? Justices? No. All right, Mr Spelberg. Thank you again. Again, Assistant State Attorney Alan Spelberg on behalf of the people. Um, if I could just begin also with the procedural pasture of the miles case, it is my understanding that the Attorney General has asked the Illinois Supreme Court to dismiss the appeal because the defendant has has since died. Um, but under the statute as it exists right now, they cannot dismiss it yet until the intervener, until members of Mr. Miles' estate or family have the opportunity to decide if they wish to intervene in the case and take over the representation. And so it will be a while, at least a matter of weeks before the Supreme Court is able to dismiss the case. So it is still a published opinion. The petition for leave to appeal is, has still been granted. The case is still on the docket of the Illinois Supreme Court. The other point I'd like to make in my experience where something like this happens, where a case has been taken by the Illinois Supreme Court and then there's an intervening death or some other matter that would render it moot, uh, the Supreme Court will often take another case, which raises the same issue to resolve that. Um, although miles is the only published decision which addresses this issue thus far, there have been, I believe, five rule 23 decisions, all following Miles, admittedly, um, and that we have sought leave to appeal in each of those cases and they are all pending. Um, so it is likely the Illinois Supreme Court will resolve this issue at some point in the future. Thank you, Mr. Spilberg. Appreciate that. You continue. And now as to the issue in this case in particular, I would highlight what my opponent just admitted, which is the defendant in this case, his conviction in for the 2013 burglary is a felony conviction and under the plain language of section 95B, the question is not whether or not the conviction would be treated as a class two felony say, but whether or not it is for an offense, which is, bears the same elements of an offense now classified as a class two felony or greater. He admits that the prior conviction was for a burglary. He admits that the elements are the same. It is inconceivable how under the plain language of section 95B, we can say that, well, we will not treat it as a conviction because it should be, uh, it would have been treated as a, uh, juvenile adjudication had it occurred in 2016 at the time of this offense. Now I recognize that miles in the rule 23 cases that followed it have said otherwise, but those cases are not consistent with the plain language of the statute, nor are they consistent with the Supreme court's determination of similar issues in construction of similar statutes over the years. In particular, one of the cases that we cite in our brief is people X Ralph Fitzsimmons versus Norgal, which specifically held, uh, in the face of a mandamus challenge against a DuPage County judge, it was specifically held that the fact that the defendant's prior conviction occurred when he was a juvenile was not a basis to treat it any different than any other conviction. And in that case, what the Supreme court did was look to the plain language of the definition of conviction found in section two dash five of the code of the criminal code and the code of corrections. And in the definition, which is identical in both provisions, made it clear that a conviction is treated as a conviction. If it is a finding of guilt and a judgment entered upon that finding guilt in a criminal court, the age of the defendant or the basis for the reason why that defendant is in the courtroom is not material to the question of whether or not it is a conviction for purposes of the code of corrections. Notably, the Illinois legislature has never amended section two dash five, the definition of conviction, nor did it amend this section, section 95B, when it had the lengthy amendments in the important amendments to the juvenile court act, it has not done anything to, to separate out convictions that occurred prior to the age of 18 for any defendant at all. Instead, it treats all convictions identically. If it was a client, if it is for an offense, which is classified as a class two felony or greater, and would be still be considered to be a class two felony or greater, then it is treated as a qualifying convictions for purposes of class X sentencing. And that's exactly what happened here. And that's exactly why the attorney below did not challenge it. That's exactly why nobody questioned his eligibility for class X sentencing. And so, Justice Connors, in response to your earlier question, where does the analysis begin? The analysis begins and ends with section 95B because the plain language of section 95B specifically says you were to look to see if it is an offense that contains the same elements in the offense now classified, not a conviction, which would be treated as a class two felony. Defendant wants you to look and see whether or not this particular defendant would be subject to a prosecution for a class two felony in 2016, but the statute tells you to look at the plain language of the statute, the elements of the offense to determine whether or not it would still be considered a class two felony. Defendant admits it would still be a class two felony and it always has been. And importantly, something that hasn't been mentioned here yet, the law is clear that age is not an element of the offense, there's not an additional element of age to be proven in juvenile court. Instead, the question is solely whether or not the defendant committed the offense and all the elements were proven beyond a reasonable doubt. And so based on that, our position has been and continues to be that any conviction entered by, committed by a defendant and entered upon him, whether or not he was over 17 or under 17 or over 18 is immaterial to the question of the eligibility for class X sentence. And that, and I would just add that that conclusion is fully consistent with the legislative determination that the amendments to the juvenile court act would be prospective only. Um, and that, that there is nothing in that determination, which would allow this court to go back and treat this as if it would have been a juvenile adjudication. And so for those reasons, we would ask this court to affirm the defendant's conviction and sentence. Thank you, Mr. Spellberg, justice Harris questions. Thank you, justice. No, well, in view of the, you say there's five other cases now that have filed that have followed, uh, people versus miles, and those are now pending before the Supreme court, uh, yet to be determined if they're taking them. Is that correct? That's correct, your honor. Okay. So those are five cases out there that have, uh, reversed based upon people versus miles. Yes, your honor. There's five cases that have reached the same conclusion as the miles court. So why should we not be consistent with five other cases of similar facts and circumstances? Well, your honor is, as you well know, you are not in any way bound by any other panel of the appellate courts. And we would ask you to just take your own independent assessment of the case law, the plain language of the statute, and reach the determination that you believe to be appropriate. Certainly. Thank you. This is Griffin. The, um, the defense and their reply brief, uh, distinguishes the people versus Jones case because they said that specifically provided for consideration of judicial adjudications. And so they argue that where the legislature decides to authorize certain sentencing enhancement provisions in some cases while declining to impose them in similar, uh, cases, uh, it indicates that a different result were intended. How do you respond to that? Your honor. I would actually say that the Jones case supports our position as opposed to defendants, because as counsel stated, the statute issue in Jones allowed for consideration of both convictions and juvenile adjudications. This statute by definition does not include any reference to juvenile adjudications, and if we, as prosecutors attempted to seek class X sentencing based upon a defendant's earlier juvenile adjudication, it would be rejected. And if it wasn't rejected in the trial court, it would be rejected in the appellate court where we, and we would concede that because where it says in section 95B that the defendant have been twice been convicted means that we cannot rely upon a juvenile adjudication, Jones obviously authorized it, the statute in Jones authorized the use of the juvenile adjudication in that scenario. And the Illinois Supreme court had to take the question, does that comport with the sixth amendment, the Apprendi line of cases, whether or not you can consider a juvenile adjudication for purposes of extended term sentencing. And what the Supreme court said was, yes, you can, that a juvenile adjudication is close enough to a conviction to be treated as something falling within the prior conditioning exception to Apprendi. But that's completely unrelated to what we have here because there's no dispute that this defendant has two prior class two or greater convictions. And so whether or not this would have been a juvenile adjudication in another scenario is not relevant to what happened here, whether or not he has prior juvenile adjudications in his background, which I'm not familiar with is irrelevant as well, Jones supports this because it recognizes that the legislature has the ability to include juvenile adjudications where it wishes to, and here it has not. And so it indicates that the legislature understood that convictions are convictions. As it did, as the Supreme court said in Fitzsimmons, as the, as section two dash five recognizes. Thanks. Hmm. So counselor is a standard looking at an offense and the nature of it, or the conviction. Cause a lot of these cases say a conviction is a conviction. So your argument is that the analysis should be the offense and not the conviction. Is that right? Yes, Your Honor. That is under the plain language of section 95 B. We believe it should be the question of a comparison of the elements of the offense. And the reason for that, the reason for the language that that the section section 95 B authorizes trial courts to consider foreign convictions, those from other States or from the federal government. And where those convictions don't necessarily match up to the class that we have, or even precisely the same elements. And so the directive is to compare the elements and to see if those elements match an offense, which is now classified a class two or greater felony, where it is a prior Illinois conviction is much easier to make that comparison, but it is still the same comparison, one of the elements, whether or not the offense itself is a class two or greater. So on the other way around, then could a juvenile be convicted of offense of an offense, no, it could be adjudicated under the juvenile law. With an offense that's the same or similar to the felony. And then they couldn't, they use that in sentencing them? No, because the statute also requires, oh, I'm sorry. I'm sorry. I'm sorry. Um, the statute not only requires that it be an offense of the elements of class two or greater, but that it'd be a conviction for the offense of class two or greater. It, so by use of the word conviction, the legislature has specifically excluded a scenario where the defendant is found guilty as a juvenile adjudication. It might have the same effect under the sixth amendment that it would be a, a, for use of extended term in certain scenarios, but it is not a conviction as defined by the legislature in the code of corrections. I see. Counsel in the light of Miller and Buffer and all these cases that examine the mind of a juvenile and all the changes that there have been in the law in that area. Does this change in the juvenile code reflect that kind of thinking by the legislature and shouldn't we be thinking along those lines when we interpret that? Well, your honor, first off, obviously Miller and Buffer are constitutional concepts that apply. Right. But the legislature was well aware of the changing understanding of brain science when it amended the juvenile court act to change the age of juvenile jurisdiction, when it amended the juvenile court act to restrict the types of offenses that satisfy for automatic transfer, as well as the age of automatic transfer. As well as when it changed the manner of sentencing defendants who are under 18 at the time of the offense. Like all of those were clearly within the legislature's mindset, but they didn't change this statute. They didn't amend it in any way. And this statute, you know, one point that nobody's mentioned is that the statute only applies to a defendant who is over 21 years old and has twice been previously convicted of two prior felonies. So the legislature by definition understood that although the third defendant is committed after he's 21, or at least sentenced after he's 21, the prior convictions could occur prior to the age of 21 and the legislature was clearly aware that there are numerous ways in which a juvenile, somebody under 18 or previously under 17 could be charged and convicted in criminal courts. And so the presumption has to be from the plain language of the statute that the legislature expected that there would be defendants who have convictions that were entered for offenses prior to the age of 18 that would fall within the ambit of this provision. All right. Thank you, sir. And do you wish to have five minutes, Mr. Jackson? Yes, please. Um, just a couple of points. Um, so normal, normal is, is different than this case. The, the statute there, um, excuse me, that for one, the statute there was only about whether there was a conviction. There was no discussion about how, uh, whether that offense would now be classified in the same way. And so the court there held that, um, the adult conviction from when the conviction, uh, so there was no, it was a different statute, a different language. And once again, there was no, not this intervening amendment to the juvenile court act. Um, one moment, please. Just going back, uh, briefly to Jones again, and the extended term statute and that compares here, I think it can be helpful to consider language that the legislature did not include section 95 B. Uh, for example, the legislature could have written it to say more in line with the extended term statute that after having twice been convicted or adjudicated delinquent in any state or federal court of an offense that contains the same Illinois as a class two or greater class felony, or that would be so classified if committed by an adult. But the legislature did not make that sort of, uh, distinction did not, did not choose to include the language that it knows it does need to include when it wants to account for, uh, conduct committed when as a juvenile. And unless the court has additional questions, that that's all I have. And again, we just asked that this court reverse and remand for a new, uh, class two sentencing hearing. Thank you. Any questions, justice Harris? No, no. Thank you. Pam. Thank you. Mr. Shiffrin. Gentlemen, thank you very much for your excellent presentation today.    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Miles case. I appreciate it. That'll be all for today.